IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ASHLEY FURNITURE INDUSTRIES, LLC,

                              Plaintiff,

        v.                                                    OPINION and ORDER

PERFICIENT, INC.,                                             21-cv-622-jdp

                              Defendant.

---

This case for breach of contract is scheduled for a court trial on July 17. The parties' dispute is about an order management system (OMS) that plaintiff Ashley Furniture Industries, LLC hired Perficient, Inc. to develop. Ashley says that Perficient failed to make a product that satisfied Ashley's requirements, so Ashley is entitled to a refund of the fees it paid Perficient as well as the licensing fee it paid to use IBM Sterling software, which served as the foundation for the system that Perficient was creating. Perficient says that it complied with the contract, that Ashley failed to properly object to any deficiencies, and that a refund isn't a proper measure of Ashley's damages. Perficient also asserts a counterclaim for Ashley's failure to pay some of Perficient's fees.

Three sets of motions are before the court: (1) motions in limine; (2) motions to exclude expert testimony; and (3) a motion for "clarification" regarding the length of the trial. The court will resolve some of the motions in this order and leave others for discussion during the final pretrial conference.

ANALYSIS

## A. Motions in limine

Ashley filed no motions in limine; all of the motions in limine discussed below were filed by Perficient. Ashley objects generally to Perficient's motions, contending that the court should defer rulings on evidentiary issues until trial. But the parties have wide-ranging disagreements on legal questions that could significantly affect the scope and length of the trial, so it makes sense to resolve those disputes now if we can.

### 1. Previously decided issues

Perficient seeks to exclude evidence and argument about three issues: (1) Perficient's performance under SOW 4 and SOW 5;[1] (2) Perficient's alleged failure to follow industry standards; and (3) Perficient's alleged failure to properly "size" the project. Perficient contends that each of these issues is foreclosed by the court's summary judgment decision, which dismissed Ashley's claims under SOW 4 and SOW 5 and, more specifically, Ashley's claim that Perficient breached SOW 5 by failing to meet industry standards. The court did not expressly grant summary judgment to Perficient on the issue whether Perficient failed to achieve proper sizing, but Perficient says that the claim about proper sizing is based on Ashley's view that Perficient didn't meet industry standards, so that claim is foreclosed as well.

Ashley doesn't respond to Perficient's arguments about issues (2) and (3), so the court will grant the motion on those issues. Ashley may not present any evidence or argument about Perficient failing to meet "industry standards."

---

[1] The parties had one "master agreement" and several subsidiary agreements called "statements of work" and "change orders" or SOWs and COs. The trial is limited to Ashley's claims that Perficient breached SOW 7 and COs 1–4, and Perficient's claims that Ashley breached SOW 9 and CO 5.

In response to Perficient's argument about performance on SOW 4 and SOW 5, Ashley writes the following:

> [T]he design elements set forth in SOW 5 are absolutely central to this Court's evaluation of whether Perficient met its obligations under SOW 7. Specifically, . . . the Business Requirements Document ("BRD") and Capability Gap Analysis ("Gap Analysis") created by Perficient under SOW 4 and the Solution Design Document ("SDD") created under SOW 5 "establish the fundamental factual underpinnings underlying Ashley's claim for breach of SOW 7." (Infra, p. 11.) Similarly, the SDD was fundamental to the Perficient's SOW 7 obligations for "development, testing, facilitation and deployment" of the OMS itself.

Dkt. 154, at 7. Ashley doesn't explain how the documents it cites "establish the fundamental factual underpinnings" of its contract claim under SOW 7. But it cites an exhibit attached to its brief that it describes as a summary of the "key business requirements" that are in the cited documents. Ashley's position appears to be that Perficient breached SOW 7 by failing to properly implement the requirements of certain documents created under SOW 4 and SOW 5.

Neither side has clearly identified specific evidence that should be admitted or excluded on this issue, so the court will reserve a ruling on this aspect of Perficient's motion. But the bottom line is this: the court granted summary judgment to Perficient on any claim based on SOW 4 and SOW 5, so the court must assume during the trial that Perficient complied with all contractual obligations in SOW 4 and SOW 5. If Ashley means to assert a claim that Perficient breached SOW 7 by failing to properly implement the work product from SOW 4 or SOW 5, that claim must be based on a requirement in SOW 7 (or one of the change orders), not on any of the requirements in SOW 4 or SOW 5. The parties should be prepared at the final pretrial conference to discuss this issue further, identifying specific evidence that should

be admitted or excluded and explaining whether and how that evidence is relevant to an alleged breach of SOW 7 or COs 1–4.

### 2. Perficient's knowledge

Perficient asks the court to exclude evidence and argument about "Perficient's knowledge of Ashley's requirements and whether they could be met by Sterling software." Dkt. 145, at 7. Perficient says that the intended purpose of such evidence is to prove fraud, which is outside the scope of this case. Ashley contends that the evidence is relevant to other issues in the case, but it never clearly explains what those issues are. It attempts to tie the evidence to its contention that Perficient breached SOW 7 by failing to deliver a working order management system. But to prove a breach of contract, Ashley doesn't have to prove what Perficient knew; Ashley must prove that Perficient failed to comply with the parties' agreement. Ashley hasn't identified any relevant purpose for introducing evidence about what Perficient knew about Ashley's requirements or the software's ability to meet those requirements, so the court will grant this motion.

### 3. Extrinsic evidence of promises

Perficient seeks to exclude extrinsic evidence that Perficient made promises to Ashley that the order management system would do the following: (1) perform reallocation at specified frequencies; (2) provide Available-to-Promise forecasting at least twelve months out; and (3) exceed the capabilities, functionality, and performance of Ashley's current order management system. Perficient relies on two provisions in the contract. First, § 10(c) disclaims any representations or warranties other than those set forth in the agreement. Second, § 16(e) sets forth an integration clause: "This Agreement, together with all Exhibits and Statements of Work and any other documents incorporated herein by reference, constitutes the sole and

4

entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter." Based on these provisions, Perficient contends that Ashley may not prove a breach of contract with oral representations or documents outside the master agreement, the SOWs or the COs.

Ashley doesn't contend that the agreement is ambiguous or that § 10(c) or § 16(e) are unenforceable. And Ashley doesn't dispute Perficient's contention that § 10(c) and § 16(e) prohibit the consideration of evidence outside the agreement itself. In fact, Ashley says nothing in its brief about those two provisions.

Instead, Ashley makes the following arguments:

1) Ashley should be allowed to rely on the solution definition document (SDD) to show a breach because "SOW 7 expressly contemplates that [the SDD] laid the foundation for Perficient's work pursuant to SOW 7"; margin comments in the document "established the need for a 'real-time' ATP feed . . . and for the new OMS to exceed the capabilities and functionality of CODIS." Dkt. 154, at 14–15.[2]

2) SOW 7 itself "establish[es]" the three alleged promises that are the subject of Perficient's motion, so Ashley should be allowed to present "testimony and exhibits that prove what the parties agreed to do in the SDD and SOW 7." *Id.* at 16–17.

3) SOW 7 states that the parties will use an "iterative methodology" when implementing the agreement, so the parties' "collaborative conversations" are relevant to showing what the scope of Perficient's obligations were. *Id.* at 19–23.

4) Testimony and exhibits that "explain how the iteratively developed ideas from SOW 7 were relayed, collaborated on, agreed to, and built into the expected design of the system" are relevant to showing that the parties modified their agreement through their course of performance. *Id.* at 24.

Argument 1) appears to be based on a view that SOW 7 incorporates the SDD and its margin comments, so a failure to comply with the SDD or the margin comments qualifies as a

---

[2] The SDD was one of the documents that Perficient produced under SOW 5.

breach of SOW 7. This is a legal argument about the scope of SOW 7 rather than extrinsic evidence, so the court will not consider it here.

Argument 2) is about what SOW 7 itself "establish[es]," so that is also about the scope of SOW 7 and is therefore outside the scope of Perficient's motion. But Ashley must rely on the agreement to make that argument; Ashley may not rely on "testimony and exhibits" to show what the agreement means because that would be inconsistent with § 10(c) and § 16(e) as well as the parol evidence rule. Again, Ashley doesn't contend that the agreement is ambiguous, so extrinsic evidence has no bearing on what the agreement means.

The gist of Argument 3) appears to be that SOW 7 itself contemplated that many of the details of the agreement would be worked out later, so the court should consider extrinsic evidence about events after the contract was signed. This argument isn't persuasive for two reasons. First, even if SOW 7 left gaps in the agreement, the five change orders agreed to after SOW 7 were designed to fill those gaps. Second, regardless of whether the change orders resolved all open issues, Ashley points to no language in the agreement suggesting that "collaborative conversations" could change the scope of the agreement. Again, that would be inconsistent with § 10(c) and § 16(e).

Argument 4) is that the parties modified their agreement through a course of performance. Ashley cites cases holding that a course of performance can modify a contract, even if the contract states that modifications must be in writing. Dkt. 154, at 24 (citing *Seven–Up Bottling Co. (Bangkok) v. Pepsico, Inc.*, 686 F. Supp. 1015, 1022 (S.D.N.Y.1988), and *Rosen Trust v. Rosen*, 53 A.D.2d 342, 386 N.Y.S.2d 491, 499 (4th Dep't 1976)); *see also Midlantic Nat. Bank/North v. Service Resource Industries, Inc.,* No. 90 Civ. 4637(JFK), 1992 WL 400736, at *4 (S.D.N.Y. Dec. 28, 1992) ("Unlike evidence of prior or contemporaneous agreements,

neither the parole evidence rule nor a merger clause apply to evidence of a subsequent agreement or modification.").[3]

The requirements for proving a contract modification through a course of performance are demanding. *See, e.g., Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003) ("[F]or a course of performance to demonstrate mutual assent to a modification, it must be 'unequivocally referable' to the modification."). Ashley doesn't attempt to show in its brief that it can meet the requirements to show that the parties modified their agreement. But Perficient didn't anticipate this issue in its motion, so the court won't resolve it here.

To sum up, Ashley may not rely on extrinsic evidence of the three alleged promises that are the subject of this motion to prove a breach of the master agreement, SOW 7, or COs 1–4. If Ashley intends to rely on such evidence to show that the parties modified their agreement through a course of performance, Ashley should be prepared at the final pretrial conference to identify the evidence it intends to introduce and explain how that evidence meets the standard for proving a contract modification.

### 4. Undisclosed expert testimony

Perficient seeks to exclude what it says is undisclosed expert testimony. Specifically, Ashley says that any witness not disclosed as an expert should not be permitted to testify about the following topics: (1) the capabilities of IBM Sterling OMS software; (2) alleged technical defects in Perficient's implementation and customization of Sterling OMS for Ashley; (3) the results of 2020 and 2021 performance tests conducted by IBM on the Sterling OMS implemented for Ashley; and (4) the value that Ashley received from the work Perficient

---

[3] The parties agree that New York law applies based on a choice-of-law provision in their agreement.

performed. Perficient says that the deposition testimony of Ravi Nalwaya (Ashley's enterprise architect for order management) and Matt Johnson (Ashley's chief information officer) includes these four topics, but Ashley didn't disclose either witness as an expert. Citing *Tribble v. Evangelides*, 670 F. 3d 753, 758 (7th Cir. 2012), Perficient contends that each of the four topics qualify as "interpretations that an untrained layman could not make if perceiving the same acts or events," so the topics would require expert testimony under Federal Rule of Evidence 702 and needed to be disclosed as such in accordance with Federal Rule of Civil Procedure 26. Under Rule 37(c)(1), the court may not allow an undisclosed expert witness to testify unless the disclosure was substantially justified or harmless.

Ashley doesn't meaningfully respond to Perficient's contention that the first three topics would require a witness with "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  Nor does Ashley contend that any failure to disclose was harmless or substantially justified. Instead, Ashley objects on the ground that Perficient hasn't identified any specific testimony that it wishes to exclude, so the court should hear the testimony before deciding whether to exclude it. In some situations, it is necessary to consider the precise testimony at issue to decide whether it is admissible. But this isn't one of those situations. Ashley doesn't identify any testimony that a lay witness could offer based on personal observations alone about how particular software functions, what technical defects that software has, or how to interpret a testing report of that software prepared by a third party.

Ashley says that Nalwaya and Johnson could testify about "why Ashley chose to terminate Perficient from the project on or about September 16, 2021." Dkt. 154, at 28. Perficient did not move to strike Nalwaya and Johnson as witnesses, so Ashley is free to call

them if their testimony is otherwise admissible. But in describing examples of possible testimony from those witnesses' depositions about Ashley's reasons for terminating the contract, Ashely points to topics that would appear to require specialized knowledge. For example, Ashely cites Johnson's testimony that continuing with the contract would have required "significant more investment to try and deliver the performance expectations of the OMS Sterling system based on reports from IBM's Expert Labs." *Id.* Ashley doesn't explain how Johnson could offer that opinion without technical knowledge relating to the IBM reports and what improvements to the software would be needed.

As for the value that Ashley received from the work Perficient performed, Ashley says that Johnson can testify based on his personal knowledge that Ashley was unable to use any of the work product that Perficient provided under SOW 7 and COs 1–4. But plaintiffs don't identify any personal observations that Johnson made that would allow him to determine the value of Perficient's work. This isn't a situation like the one cited by Ashley in which an owner of a company projects her future profits based on her personal knowledge of the company's past profits. Dkt. 154, at 27 (citing Fed. R. Evid. 701 Advisory Committee Notes to 2000 Amendment). It's more like *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Intern., Inc.*, 533 F.3d 555, 559–61 (7th Cir. 2008), in which the court that held that a company officer's "valuation attempt . . . based on his special experience in the tire industry" qualified as expert testimony. As Perficient points out, determining the value of Perficient's work would require the witness to know whether technical design documents and software code could be reused in a future project. Ashley doesn't dispute this or explain how Johnson or any other witness could testify about the value of Perficient's work product to Ashley without venturing into subject matters involving expert knowledge.

Alternatively, Ashley asks the court to bar Perficient's nonexpert witnesses from testifying about the same issues. The court will grant that request. Neither party may present testimony from a nonexpert about the three issues identified in the motion.

**5. Presumption regarding metadata**

Perficient moves under Federal Rule of Civil Procedure 37(e) to be granted "a favorable presumption" regarding when Perficient delivered certain documents to Ashley. Perficient says that Ashley's counsel accessed potential exhibits that were on a SharePoint site, in the process altering metadata related to when the document was last saved or modified. Perficient also says that there is potential prejudice because Perficient may "no longer be able to show that a deliverable in question had reached its current state by a particular date." Dkt. 145, at 16.

The court will deny this motion without prejudice, for three reasons. First, Perficient hasn't identified a specific issue in dispute that the altered metadata will prevent Perficient from proving or disproving. The court declines to resolve this issue out of context.

Second, Rule 37(e) is limited to relief that is "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Perficient's motion rests on an assumption that the alterations in metadata prevent Perficient from determining when a document was delivered, but Perficient hasn't shown that. Ashley suggests that the old metadata could be retrieved, or the same information could be available from other sources. Perficient doesn't address either of those possibilities.

Third, the relief that Perficient is requesting—a favorable presumption—is available "only upon finding that [Ashley] acted with the intent to deprive another party of the information." Fed. R. Civ. P. 37(e)(2). Perficient hasn't shown or even alleged that Ashley intentionally changed a document's metadata.

10

If Perficient intends to renew this motion, it should be prepared to address each of the court's three concerns during the final pretrial conference.

### 6.  Damages

Ashley seeks more than $9 million in compensatory damages. This amount includes two things: (1) the service fees that Ashley paid Perficient for SOW 7 and COs 1–4; and (2) the licensing fee from IBM for using its Sterling software.

Perficient contends that Ashley cannot recover these damages, relying on the following premises:

(1) the ordinary measure of damages for a breach of contract is the party's expectation interest, which is the amount of money the party would need to put itself in the position it would have been in without the breach, *see Waxman v. Envipco Pick Up & Processing Services, Inc.*, No. 02 Civ. 10132, 2006 WL 236818, at *4–7 (S.D.N.Y. 2006);

(2) Ashley's damages are based on a restitution theory that is available only when the party is entitled to rescind the contract;

(3) rescission requires a showing that: (a) there was a "total breach or repudiation" of the contract, a material and willful breach, or a breach that is "so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract"; and (b) "the status quo may be substantially restored," Dkt. 145, at 18;

(4) Ashley hasn't met the standard for rescission; and

(5) Even if Ashley met the standard for rescission, Ashley forfeited its right to rescind by continuing with the contract after the alleged breach.

Ashley disputes that it is seeking restitution; it says that its $9 million in damages is based on its expectation interest. But Ashley doesn't support that view. Ashley seeks the return of the money it paid Perficient, which would return Ashley in the position in which it started. That is restitution. *See Waxman*, 2006 WL 236818, at *4 (restitution interest is "the value of the benefit conferred to the other party"). If Perficient had provided Ashley with an order management system that met Ashley's expectations, Ashley would not be entitled to a refund

of its money. Ashley's expectation interest is the amount of money that Ashley would have to spend to complete the job that it hired and paid Perficient to do. Ashley cites no evidence that the amount would be the same amount that Ashley paid to Perficient for SOW 7 and COs 1–4. So the court agrees with Perficient that Ashley is seeking restitution.

Despite the parties' dispute about how to characterize Ashley's damages, the parties appear to substantially agree on what Ashley must prove to recover its restitution interest. Ashley contends that it is entitled to a refund if it shows that Perficient's alleged breach was "so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract." Dkt. 154, at 39 (quoting *Feldmann v. Scepter Grp., Pte. Ltd.*, 185 A.D.3d 449, 450, 128 N.Y.S.3d 13 (2020)). That is essentially the same standard that Perficient cited for rescission. Ashley also doesn't dispute Perficient's contention that Ashley wouldn't be entitled to terminate the contract if Ashley elected to continue with the contract after a breach. Dkt. 145, at 20–21 (citing *Beeland Ints., Inc. v. Armstrong*, No. 95 CIV. 8132 JES HBP 1999 WL 813266, at *16-17 (S.D.N.Y. Oct. 12, 1999); *ESPN, Inc. v. Off. of Com'r of Baseball*, 76 F. Supp. 2d 383, 392 (S.D.N.Y. 1999); *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1011 (S.D.N.Y. 1995)). But Ashley contends that Perficient's breach *did* defeat the purpose of their agreement, which Ashley says was to provide a working order management system, and it denies that it elected to continue the contract after learning of Perficient's alleged breaches.

The fundamental question in this case is whether Perficient breached SOW 7 or COs 1–4 in a way that defeated the essential purpose of the contract. The court would not resolve that issue in a motion-in-limine unless the answer was clear based on undisputed evidence. Neither side supports their argument on this issue with anything more than conclusory statements, so the court declines to decide it here.

As for whether Ashley forfeited its right to terminate the contract, Perficient says that Ashley elected to continue with the contract after learning about Perficient's alleged breaches. Specifically, Perficient says that Ashley relies on IBM's September 2020 "health check assessment" as evidence of Perficient's breach, but Ashley executed additional change orders after that, demonstrating its continued performance.

In response, Ashley says that it entered into SOW 7 and COs 1–4 *before* IBM issued its assessment, so those agreements cannot be construed as an election to continue. But Ashley admits that the parties agreed to CO 5 after the assessment. Ashley gives two reasons why its decision to enter into CO 5 should not be construed as a decision to continue performance of SOW 7 and the previous COs: (1) CO 5 "was Perficient's final attempt to design, implement, and deploy reallocation as recommended by IBM by the September 17, 2021 deadline;" and (2) "the June 4, 2021 Performance Test Report confirmed that IBM Sterling did not have the functionality to accomplish what Ashley needed on customer order reallocation and that Perficient had designed the system incorrectly." Dkt. 154, at 42.  But Ashley doesn't explain how either of these observations supports a conclusion that CO 5 can be construed as anything other than an election to continue with the contract rather than terminate it. If that's the case, it suggests that Ashley forfeited its right to terminate SOW 7 and COs 1–4 by entering into CO 5. And because Ashley never paid for any work product from CO 5, it further suggests that Ashley is not entitled to any damages, even assuming that Perficient breached CO 5.

Ashley cites *ESPN*, 76 F. Supp. 2d at 392, for the proposition that it didn't waive its right to terminate because it didn't receive any "benefits" from Perficient's continued performance. Presumably, Ashley is relying on the statement in *ESPN* that a "party cannot elect to continue with the contract, continue to receive benefits from it, and thereafter bring

an action for rescission or total breach." *Id.* (internal quotations omitted). But *ESPN* is clear that the election of remedies doctrine is not contingent on a party's perception of whether continued performance is beneficial. The important question is simply whether the party chooses to continue with the contract: "Once a party elects to continue the contract, it can never thereafter elect to terminate the contract based on that breach, although it retains the option of terminating the contract based on other, subsequent breaches." *Id.* at 387–88 (internal quotation marks and alterations omitted).

This issue is potentially dispositive of Ashley's claim, so the court will not resolve it in this order. But Ashley should be prepared to explain during the final pretrial conference why it did not forfeit its right to terminate SOW 7 and COs 1–4 by entering into CO 5.

## B.  Motions on experts

### 1.  Perficient's motion to exclude Kimberling's testimony

Eric Kimberling identifies himself as an expert on the "enterprise software industry," including "software selection, implementation, organization change management (OCM), and system strategy." Dkt. 42, at 4. Perficient seeks to exclude all of Kimberling's testimony, including any testimony related to the six main opinions in his two reports:

1) Perficient failed to fully grasp Ashley's business practices and requirements, Dkt. 42, at 28–35;

2) Perficient failed to conduct a "platform agnostic requirements and selection process," *id.* at 35–45;

3) Perficient misrepresented its expertise regarding IBM Sterling, *id.* at 46–53;

4) Perficient failed to "leverage IBM expertise," *id.* at 53–67;

5) Perficient failed to "act as a trusted partner," *id.* at 67–71;

6) Perficient managed the project poorly, *id.* at 71–82.

14

Perficient objects to each of these opinions on relevance grounds, and it also objects to some subsidiary opinions on the grounds that Kimberling isn't qualified to give them or he failed to support them.

Perficient objects to opinions 1) and 2) on the ground that they are related to Perficient's performance under SOW 4 and SOW 5, and the court granted summary judgment to Perficient on those claims. Ashley's response to this objection is similar to its response to Perficient's motion in limine 1: Perficient's performance under SOW 4 and SOW 5 is relevant to showing breaches under SOW 7 and COs 1–4. The court reserved a ruling on that issue in the context of the motion in limine, so the court will do so here as well. Ashley should be prepared to explain during the final pretrial conference how opinions 1) and 2) support a finding that Perficient breached SOW 7 or COs 1–4. Specifically, Ashley will have to explain how these opinions are relevant to proving one of the elements of its breach-of-contract claim. As already discussed, evidence about what Perficient knew about Ashley's needs is not relevant unless that knowledge is manifested in one of the agreements at issue.

As for opinions 3) and 4), Ashley says that "Perficient's failure to make proper use of IBM's expertise . . . help explain[s] Perficient's failure to achieve its contractual obligation to achieve 'deployment' of the OMS, as well as issues leading up to that ultimate failure." Dkt. 157, at 5. But it doesn't matter *why* Perficient may have breached the contract; it matters *whether* Perficient breached the contract. Ashley isn't suing Perficient for negligence or another tort claim that requires an assessment of the reasonableness of Perficient's conduct, so proving that Perficient failed to take steps that could have avoided an alleged breach will not help Ashley prove its claim. The court will grant the motion to exclude opinions 3) and 4).

15

Opinion 5) is that Perficient failed to "act as a trusted partner." What that means is not clear from the opinion itself. A review of Kimberling's report reveals several subsidiary opinions, including that Perficient's oversight of the project was "lacking," that Perficient demonstrated a "lack of concern" for the project, and that Perficient should have communicated more often and more clearly with Ashley. Dkt. 42, at 67–71. Neither Kimberling nor Ashley explain how any of these alleged problems are evidence of a breach of contract, and no connection is apparent. One of the few references to the contract in this section of the report is that SOW 7 itself was deficient because it "does not include a defined escalation path for the resolution of issues." Dkt. 42, at 68. But Perficient obviously cannot prove that Perficient breached a contract by pointing to a provision that isn't in the contract. Again, Ashley is not suing Perficient for negligence. The court will grant the motion to exclude opinion 5).

Kimberling titles opinion 6) "Unidentified risks due to deficient project management." Dkt. 42, at 71. Perficient interprets this as an opinion that it failed to follow industry standards, and it contends that the summary judgment decision resolved any claims based on that issue. But Perficient doesn't develop this argument, and Ashley says that Perficient is mischaracterizing this part of Kimberling's report. Specifically, Ashley says that Kimberling's opinion is that "poor project management and resource allocation . . . contributed to Perficient's breaches." Dkt. 157, at 6. This is similar to Perficient's response regarding opinion 1), so the court will reserve a ruling on this part of the motion, and Ashley will have to explain during the final pretrial how opinion 6) is relevant to showing that Perficient breached SOW 7 or COs 1–4.

In addition to the six broad opinions in Kimberling's report, Perficient objects to several subsidiary opinions. First, Perficient says that Kimberling failed to support or explain his

opinion that Perficient didn't have the necessary "level of project discipline." Dkt. 143, at 8 (citing Dkt. 42, at 74). Ashley doesn't respond to this contention. In any event, Kimberling doesn't connect his opinion about project discipline to a contractual requirement. So the court will grant this part of the motion.

Second, Perficient challenges on multiple grounds Kimberling's opinion that Perficient should have used "user stories" to "document[] [Ashley's] requirements." Dkt. 42, at 31–32. Again, Kimberling doesn't connect this alleged failure to a contractual requirement. Instead, Kimberling identifies this as a "best practice," and he says that SOW 4 and SOW 7 should have included such stories. Perficient is correct that the court dismissed Ashley's claims based on an alleged failure to follow industry standards. Regardless, this is another example of Kimberling relying on a standard that he acknowledges is not in the parties' agreement. The court will exclude this opinion.

Third, Perficient says that Kimberling didn't support his opinions that Perficient's "change review and approval process," "business and sign-off," and "record-keeping" were insufficient. Dkt. 143, at 8–9 (citing Dkt. 42, at 72–80). Ashley says that Kimberling relied on his own experience. Ashley is correct that an expert may rely on his own experience, but he must do more than provide a conclusion. *See Downing v. Abbott Laboratories*, 48 F.4th 793, 809 (7th Cir. 2022). In any event, the more fundamental problem is again that Ashley is not suing Perficient for negligence, and the court dismissed Ashley's claims based on a failure to meet industry standards. The court will exclude these opinions.

Fourth, Perficient seeks to exclude opinions in which Kimberling repeats conclusions from IBM's reports of its performance testing that Perficient made errors and mistakes. Perficient says that Kimberling didn't do his own analysis of the software, and he admitted

during his deposition that he was not an expert on the software. In response, Ashley says that Kimberling was entitled under Federal Rule of Evidence 703 to assume that the information IBM's reports was correct. Rule 703 allows an expert to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed."

Both the court of appeals and this court have held that Rule 703 does not permit one expert to parrot the opinions of another expert when "the soundness of the underlying expert judgment is in issue." *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613–14 (7th Cir. 2002). For example, in *In re James Wilson Associates*, 965 F.2d 160, 172–73 (7th Cir.1992), the court excluded testimony of an architect who relied on the report of an engineer about the state of repair of a building. The court concluded that "the architect could use what the engineer told him to offer an opinion within the architect's domain of expertise, but he could not testify for the purpose of vouching for the truth of what the engineer had told him— of becoming in short the engineer's spokesman." *See also U.S. v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014) ("An expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy."); *Rodewald v. Wisconsin Central, Ltd.*, 2022 WL 795649, at *6 (W.D. Wis. 2022) (excluding testimony of expert who "merely parrots the opinions and analysis of other experts who actually performed site-line analyses"). It's undisputed that Kimberling didn't do his own analysis, and Ashley identifies no basis that he had for evaluating IBM's reports. The court will exclude these opinions.

Fifth, Perficient seeks to exclude Kimberling's opinions that Perficient's design of the software "would never have worked for Ashley" and that Perficient "was never even close to producing a working OMS." Dkt. 143, at 11 (quoting Dkt. 42, at 48, 76). Perficient says that

18

Kimberling provides no support for these conclusions. Ashley doesn't respond to this argument, so the court will exclude those opinions.

Sixth, Perficient challenges large portions of Kimberling's report in which he summarizes emails, meetings, and other communications. Ashley acknowledges that Kimberling may not testify as a fact witness. Ashley will have to prove fact testimony through other witnesses, and any facts that Kimberling assumes should be limited to those necessary to provide context for his opinions.

Seventh, and finally, Perficient challenges numerous statements in Kimberling's report in which he makes a credibility determination or an offers an opinion about someone's intent. Ashley's response is that Kimberling's opinions on these issues are supported by record citations. But this misses the point. Kimberling is not an expert on credibility or mental states, and, even if he were, those are issues to be determined by the factfinder, not experts. The court will exclude those opinions.

### 2. Ashley's motion to exclude Trivett's testimony

Todd Trivett describes himself as an expert on "software failure disputes, software intellectual property disputes, e-discovery, and computer forensics." Dkt. 41, at 5. Ashley seeks to exclude Trivett's testimony on two issues: (1) the reasons for changes to the scope of the project; and (2) the timing and scope of Ashley communications to Perficient about its need for customer order reallocation. Ashley objects to these issues for one of the same reasons that Perficient objects to some of Kimberling's testimony, which is that Trivett is simply repeating fact testimony of other witnesses.

As an initial matter, the sole purpose of Trivett's report is to rebut Kimberling's opinions, so Trivett's rebuttal to any of Kimberling's opinion that have been excluded is now

irrelevant. As for the two issues raised by Ashley, Perficient doesn't respond to Ashley's objection to issue (2), so the court will grant that part of the motion as unopposed.

As for issue (1), neither side explains why it matters why the scope of the project changed. Again, the important question is whether Perficient met its obligations under the change orders and SOW 7, not whether the changes were needed because of one or both parties' previous missteps. Regardless, Perficient hasn't identified any expert testimony that Trivett can offer on the issue. Perficient cites ¶¶ 92–99 of Trivett's report, but those paragraphs are either interpretations of the parties' agreements or summaries of deposition testimony. Expert testimony could be useful to help explain technical terms in the contracts, but it's the court's role to determine the scope of the contract and to assess the credibility of fact witnesses. The court will exclude expert testimony about issue (1).

## C. Motion regarding trial length

The parties disagree about how long the trial should last. Ashley says that the trial is likely to take two weeks, and it asks that the court allow six days for Ashley to present its side of the case. Perficient says that the trial should be limited to six days, and it asks that the court impose time limits, dividing the six days evenly between the parties.

Ashley's estimate seems inflated. It is based on the parties' estimate in the Rule 26(f) report, but the parties agreed to that estimate before the court's summary judgment decision that significantly narrowed the issues for both liability and damages. Ashley's position seems to be that nearly all the evidence on the dismissed claims is also relevant for the claims that remain. The court has rejected that position in this order, so that should also affect Ashley's trial estimate.

Based on what the court knows of the case, six days should be more than enough time for the trial. The court will not place strict time limits on the parties now. But the parties should be prepared at the final pretrial conference to provide updated trial estimates, along with an explanation of why each party believes the estimate is realistic based on the court's rulings in this order.

ORDER

IT IS ORDERED that:

1. The court issues the following rulings on Perficient, Inc's motions in limine, Dkt. 145:

    a. The court GRANTS the motion to exclude evidence and argument about Perficient's alleged failure to follow industry standards and Perficient's alleged failure to properly "size" the project.

    b. The court reserves a ruling on the motion to exclude evidence or argument regarding Perficient's performance under SOW 4 and SOW 5.

    c. The court GRANTS the motion to exclude evidence and argument about Perficient's knowledge of Ashley's requirements and whether they could be met by Sterling software.

    d. The court GRANTS the motion to exclude extrinsic evidence that the master agreement, SOW 7, or CO 1–5 include promises that the order management system would do the following things: (1) perform reallocation at specified frequencies; (2) provide Available-to-Promise forecasting at least twelve months out; and (3) exceed the capabilities, functionality, and performance of Ashley's current order management system. The court reserves a ruling on whether such evidence may be relevant to show a contract modification through course of performance.

    e. The court GRANTS the motion to exclude testimony from a lay witness about the following topics: (1) the capabilities of IBM Sterling OMS software; (2) alleged technical defects in Perficient's implementation and customization of Sterling OMS for Ashley; (3) the results of 2020 and 2021 performance tests conducted by IBM on the Sterling OMS implemented for Ashley; and (4) the value that Ashley received from the work Perficient performed.

    f.   The court DENIES without prejudice Perficient's motion for a "favorable presumption" regarding when it delivered certain documents to Ashley.

    g.   The court reserves a ruling on whether Ashley may recover restitution for a breach.

2.   The court reserves a ruling on Perficient's motion to exclude Eric Kimberling's testimony regarding opinions 1), 2), and 6) in his report. The court GRANTS the motion to exclude Kimberling's testimony, Dkt 143, in all other respects.

3.   The court GRANTS Ashley's motion to exclude Todd Trivett's testimony, Dkt. 148, about the following two issues: (1) the reasons for changes to the scope of the project; and (2) the timing and scope of Ashley communications to Perficient about its need for customer order reallocation.

4.   Ashley's motion for a ruling that allows Ashley six days to present its case, Dkt. 147, is DENIED. The parties are to present updated trial estimates at the final pretrial conference, based on the rulings in this order.

Entered July 11, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

22