IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ASHLEY FURNITURE INDUSTRIES, LLC,

                Plaintiff,

v.

PERFICIENT, INC.,

                Defendant.

ORDER

21-cv-622-jdp

---

As discussed at the July 12 conference with the parties, the court struck the trial date in this case because there are too many legal issues that remain in dispute that could affect the scope of the trial. The parties are directed to submit briefs that address the following issues.

First, what is the scope of Perficient's obligations under SOW 7 and the change orders as relevant to this case? Questions the parties should address include the following:

- Does the agreement require Perficient to provide a "working order management system?" If so, what does that requirement mean and what is it based on? If not, do Ashley's claims fail?

- Does the agreement include any promises about customer order reallocation? If so, what is the basis for that promise?

- Is there a contractual basis for any other alleged breach? If so, what is the specific breach and what is it based on?

- Does CO 5 have any relevance to Ashley's claims? Or is CO 5 outside the scope of Ashley claims because Ashley didn't make payments for any work on CO 5?

Second, assuming a breach, did Ashley forfeit its right to a remedy? Questions on this topic include the following:

- Did Ashley elect to continue with the agreement by entering into CO 5? If so, did Ashley forfeit its right to terminate SOW 7 or COs 1–4? If so, does that foreclose Ashley's claims?

- Did Ashley comply with the agreement's provisions regarding notice of breaches? Why or why not? Does any violation of the notice provision mean that Ashley forfeited a claim based on that alleged breach?

- Did the testing process affect when or how Ashley needed to object? If so, how?

- Did IBM's reports or Ashley's June 2021 letter qualify as a proper notice of breach? Why or why not? Are there other notices? If so, what are they, and do they qualify as proper notices?

- How should § 5(d), § 5(f), § 10(b)(v), and § 16(c) in the master agreement be construed together as they relate to notice requirements?

- Did Ashley give Perficient an opportunity to cure in accordance with § 10(b)(v)?

Third, assuming a breach and no forfeiture, can Ashley obtain a remedy? Questions on this topic include the following:

- Does § 10(b)(v) limit Ashley's damages in this case? Why or why not? If § 10(b)(v) limits damages to Ashley's expectation interest, do Ashley's claims fail?

- Did Ashley satisfy the prerequisites for termination in § 5(e)(iii) for any part of the agreement? If so, which deliverable and which part of the contract was at issue, and what evidence supports that contention?

- Does Ashley need to meet the standard for rescission to obtain restitution? If so, what is that standard? Can Ashley meet it? Why or why not? Is recission an available remedy in a case like this one involving a service contract that has been partially performed?

- Are IBM licensing fees barred as consequential damages under § 12(a) because they are governed by a separate agreement? Why or why not?

Fourth, there are evidentiary issues that could have a substantial effect on the case:

- What evidence does Ashley intend to introduce related to SOW 4 and 5, and how is it connected to a violation of SOW 7?

- Did the parties modify their agreement through a course of performance? If so, how, and what evidence demonstrates a modification under New York law?

- Do any of Eric Kimberling's opinions that the court hasn't excluded provide a basis for finding a breach? If not, can Ashley prove a breach without expert testimony?

- In light of the court's conclusion in the motions-in-limine order that Kimberling may not testify about the IBM reports, can Ashley rely on those reports to prove a breach? If so, what specific breaches of the agreement are shown by the report?

Opening briefs from both sides are due by August 14, 2023. Responses are due August 28, 2023. The parties are not to submit reply briefs unless the court invites them. No additional proposed findings of fact are needed, but the parties may cite the record for discrete factual propositions that are directly supported by the record. The parties are not to rely on string record citations to support vague or conclusory assertions. After resolving the legal disputes, the court will set a new trial date, if necessary.

Entered July 17, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge